# CIRCUIT COURT OF FAIRFAX COUNTY

Bruce A. Schreiber

v.

Carla B. Schreiber

### Case No. (Chancery) 148669

### September 3, 1997

### BY JUDGE JANE MARUM ROUSH

This matter came on to be heard on August 15, 1997, on the Motion of the Complainant/Cross-Defendant Bruce A. Schreiber for leave to file a third-party claim in this divorce action. Mr. Schreiber seeks to add as a party to this divorce action the putative father of a child born to his wife during the marriage. The Court had been advised that the motion was unopposed. At the hearing, however, the defendant Carla B. Schreiber opposed the motion. The Court took the motion under advisement. Having fully considered the motion, the Court will enter an order denying the motion.

#### Facts

The facts of this case will be briefly summarized. Bruce A. Schreiber ("Mr. Schreiber") commenced this action for a divorce *a vinculo matrimonii* against Carla B. Schreiber ("Mrs. Schreiber") on February 24, 1997. Mrs. Schreiber filed a cross-bill that, among other things, seeks child support from Mr. Schreiber for Mrs. Schreiber's son, Christopher.

The parties agree that, at the time of their marriage on November 1, 1995, Mrs. Schreiber was pregnant with a child fathered by Patrick Genuit. Her son, Christopher, was born on November 29, 1995, less than one month after the marriage. Mr. Schreiber knew at the time of the marriage that he was not the

father of Mrs. Schreiber's unborn child. According to Mrs. Schreiber, Mr. Schreiber agreed to take care of the child as if he were his own son. Mrs. Schreiber contends that, in reliance on that promise, she quit her job in Florida and moved to Virginia to marry Mr. Schreiber. Mr. Schreiber was listed as the father of the child on the child's birth certificate and has claimed the child as a dependent on his tax return. Mr. Schreiber has not adopted Christopher.

The Schreibers separated in February, 1997. Relying on *T. v. T.*, 216 Va. 867, 224 S.E.2d 148 (1976), Mrs. Schreiber is seeking an award of child support from Mr. Schreiber. Mr. Schreiber seeks to join Mr. Genuit, the child's putative father, as a party in this suit.[1] Citing Rule 2:13, Mr. Schreiber argues that joining the biological father of Christopher in this divorce action will "serve to conserve judicial resources by obviating the need to relitigate issues such as paternity, child support amount, and contribution, if any due from either of the respective parties at interest herein." Furthermore, Mr. Schreiber argues, Mr. Genuit should be added as a party defendant because Mrs. Schreiber, who is seeking child support based on a contract theory recognized in *T. v. T.*, *supra*, has a duty to mitigate her damages by seeking child support from the child's natural father.

### Joinder of Natural Father

Generally, only the two spouses are proper parties to a divorce action. Cases from other jurisdictions have allowed a third party to intervene in a divorce suit when, for example, the third party has an interest in property involved in the divorce or it is claimed that property has been fraudulently transferred from a spouse to the third party. *See generally*, H. Clark, *Law of Domestic Relations*, § 13.2 (1968), and cases cited therein.

Except in very limited circumstances, third parties should not be allowed to be parties to divorce actions.[2] A divorce by its very nature involves the rights and interests of many persons. If everyone with an interest in a divorce action were added as a party to the suit, there would be no end to divorce litigation, which is already over time-consuming and expensive for the typical couple. *See, e.g., Aniballi v. Aniballi*, 225 Mont. 384, 842 P.2d 342 (1992) (husband's

---

[1] Mr. and Mrs. Schreiber agree that Mr. Genuit is Christopher's natural father. Mr. Genuit, however, has yet to be heard from on the subject of Christopher's paternity.

[2] For example, Virginia law contemplates that "persons with a legitimate interest" may, in some circumstances, intervene in an action in which custody or visitation is in issue for the purpose of determining custody and visitation of minor children. Va. Code Ann. §§ 20-124.1 and 20-124.2.

parents properly denied intervention in divorce to assert their interest in marital home); *Venuti v. Venuti,* 36 Conn. Supp. 56, 410 A.2d 1012 (1979) (person injured in automobile collision with husband not proper party to divorce action); *Meadow v. Superior Court,* 59 Cal. 2d 610, 30 Cal. Rptr. 824, 381 P.2d 648 (1963) (spouse's attorney cannot intervene in divorce to assert attorney's fee claim); *Porter v. Porter,* 101 Ariz. 131, 416 P.2d 564 (1966) (husband's business partners improperly permitted to intervene in divorce action); *In re Drews,* 115 Ill. 2d 201, 503 N.E.2d 339 (1986) (guardian for spouse not a proper party to divorce); *Miller v. Miller,* 677 A.2d 64 (Me. 1996) (children not proper parties to parents' divorce). *See also Wood v. Snipes,* No. 1147-97-4 (Va. App., Aug. 26, 1997) (unpublished) (husband's alleged paramour properly denied intervention in divorce suit).

The Court concludes that it is neither necessary nor desirable under the facts of this case to join the putative father as a party to this suit. Mr. Schreiber is free to argue that Mrs. Schreiber has failed to mitigate her damages by not seeking child support from Mr. Genuit. If the amount of child support obtainable from Mr. Genuit is in dispute, the parties can take his deposition in Texas for use at trial. Tex. Civ. Prac. & Rem. Code Ann. § 20.0002.

Furthermore, it does not appear that Mr. Genuit is subject to the jurisdiction of this Court. It appears from the pleadings and the memoranda filed by counsel that Mr. Genuit is (and has been at all times relevant to this case) a resident of Texas. Motion for Leave to File a Third-Party Claim Against Natural Father at ¶ 12(a). According to Mrs. Schreiber, she was two months pregnant and a Florida resident when she met Mr. Schreiber. Her only connection to Virginia is that she moved to Virginia in order to marry Mr. Schreiber. [Mrs. Schreiber's] Memorandum of Points and Authorities at p. 2. Under these facts, it appears that this Court could not obtain jurisdiction over Mr. Genuit under either the "long arm" statute, Va. Code § 8.01-328.1(A)(8)(iii) (jurisdiction if "by personal conduct in this Commonwealth ... the person conceived or fathered a child in this Commonwealth"), or even the "extended personal jurisdiction" of the Uniform Interstate Family Support Act, Va. Code § 20-88.35.

For the foregoing reasons, Mr. Schreiber's Motion for Leave to File Third-Party Claim Against Natural Father will be denied.

November 17, 1997

BY JUDGE GERALD BRUCE LEE

This matter is before the Court on Carla Schreiber's ("Wife") Motion for *Pendente Lite* spousal and child support against Bruce Schreiber ("Husband"). The issue presented is whether Husband, who is not the biological father of the child, is obligated to provide the Wife with child support under any of the following theories:

(1) The Husband's holding himself out to the community and government as the father of the child;

(2) An oral contract to provide child support; or

(3) Equitable estoppel.

Wife contends that, although Husband is not the biological father of her child, he is bound by an oral contract and the principles of equitable estoppel to provide support for the child. Husband responds that because he is not the biological father, he cannot be held liable for child support, temporary or otherwise, under Va. Code § 20-103. Husband argues that equitable estoppel does not apply as there has been no misrepresentation to the mother or the child concerning paternity, nor any change of position as a result of his alleged promise to support the child. Furthermore, Husband states that if there was an oral contract, it would be governed by the laws of Florida, the place of the alleged contracting. Husband submits that Florida law consistently holds that only natural and adoptive parents have a legal duty to support minor children.

After considering the parties' oral arguments, the demeanor and testimony of the witnesses, the written memoranda, and authorities cited therein, the Court denies Wife's Motion for *Pendente Lite* child support for the reasons set forth below.

*Facts*

In May 1995, Wife became pregnant with the child of Mr. Patrick Genuit, a resident of Texas. After the Wife advised Mr. Genuit that she was pregnant and in need of support, Mr. Genuit refused to provide support.

In June 1995, Wife met Husband at an Air Force base in Jacksonville, Florida. In the two months that followed, their relationship grew very serious. During August of 1995, while the parties were in Orlando, Florida, the parties had discussions regarding Husband's feelings toward Wife, Wife's expected child, and the prospect of marriage.

While in Florida, Husband told Wife that he wanted to marry her. At this time, the parties also discussed issues concerning the expected child. There is conflicting evidence as to the terms by which Husband agreed to support the child. The parties do concede that there were conversations regarding the husband adopting the child. However, in these conversations, Husband indicated to Wife his unwillingness to take on such a major responsibility so early in the relationship.

In October 1995, Wife came to Virginia to visit Husband and to encourage him to marry her prior to the child's birth. The parties agreed to get married in March of 1996, two months after the wife's due date. In any event, the parties were married on November 1, 1995, in Alexandria, Virginia. On November 29, 1995, the Wife gave birth to a son. While in the hospital, Husband agreed to put his name on the child's birth certificate. The Husband also acknowledged the child as his own for health insurance purposes and in order to obtain a Serviceman's Dependent identification card for the child. In addition, the Husband claimed the child as a dependent on his 1995 and 1996 tax returns.

In February 1997, the parties separated from one another. Wife now brings this action against Husband for temporary support.

## I. *Holding Out As the Child's Father*

Wife contends that Husband held himself out to the public and represented to the government that he was the father of the child. Husband listed himself as the child's father on the birth certificate, health insurance information, and in order to obtain a Serviceman's Identification card for the child. In addition, Husband claimed the child as a dependent on his 1995 and 1996 tax returns.

The Code of Virginia, § 20-124.2(C), states, "The court may order that support be paid for any child of the parties ... ." The general rule in Virginia is that a parent owes a duty of support only to his or her natural or legally adopted child. *T. v. T.*, 216 Va. 867, 869 (1976). The parties do not dispute that Husband is not the natural father of the child. Also, the parties understand that there is no common law adoption in Virginia. Adoption in Virginia is solely a creature of statute. "Since Virginia does not recognize common law adoption, the rights and responsibilities incidental thereto, such as support, likewise do not exist." *NPA v. WBA*, 8 Va. App. 246, 250 (1989). Therefore, as Husband is not the child's natural father, nor can Husband be said to have adopted this child due to his actions in the community and with the government, Husband is not liable to pay any child support.

## II. *Oral Contract*

Wife contends that an oral contract was formed between the parties whereby Husband agreed to support the child. The parties disagree as to when and where the contract was formed. Wife states that the formation of the oral contract was at the marriage ceremony of the parties in Alexandria, Virginia. Husband states that the contract was made, if at all, while the parties were vacationing in Orlando, Florida.

Any questions regarding the validity and enforceability of the contract, whether express or implied, are to be determined by the laws of the place where the contracting occurred. *Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423 (1970). The Court holds that this alleged oral contract, if made, was made in Florida. Therefore, as Florida was the place where the alleged oral agreement was made and accepted, the Court holds that the laws of Florida will govern the determination as to the existence of the oral contract.

Wife claims that Husband's putting his name on the child's birth certificate, claiming the child as a dependent, and promising to care for her child as his own establish Husband's contractual responsibility for child support. In *Albert v. Albert*, 415 So. 2d 818 (Fla. App. D2 1982), the appellee contended that since the appellant, the non-biological father of the child, agreed to accept responsibility for the child and treat the child as his own, he should be responsible for support. During the trial in *Albert*, both parties testified that the appellant had orally agreed to take care of the child as if the child was his own. Additionally, there was evidence that appellant signed the child's birth certificate. The Court found that no contract was proven in this case upon which support could be awarded. *Id.* at 819. The well-stated principle regarding the obligation for child support was stated in *Hippen v. Hippen*, 491 So. 2d 1304 (Fla. App. D1 1986). A person has no legal duty to support a minor child who is neither his natural nor adopted child and for whose care he has not contracted. *Id.* at 1305.

Applying the Florida case law, the Court holds that no oral contract existed between the parties. In *Albert*, the parties both testified as to appellant's oral agreement to take care of the child, yet the court found that no contract for support existed. In this case, the evidence regarding the contract is weaker than in *Albert* because the parties dispute the existence of an oral support agreement. Therefore, as the Court does not find the basic contract requirement of the meeting of the minds, no oral contract exists. Husband is not contractually responsible for child support.

### III. *Equitable Estoppel*

Wife contends that Husband is equitably estopped, under the circumstances, to deny the child support obligation. Wife states that she is entitled to support based upon *T. v. T.*, 216 Va. 867 (1976), where the Court held that the husband was equitably estopped to deny child support. Husband responds that there are many factual similarities between this case and *T. v. T.*, but there are also material differences that warrant against applying its holding to this case.

In *T. v. T.*, the wife, who was then single, became pregnant. She made plans to move to New York, have her baby, and then put the child up for adoption. With full knowledge of her pregnancy, husband promised the expectant mother that if she would forego her plans and marry him, he would care for the non-biological child as his own. Relying upon husband's promise, the mother married husband and abandoned her plans regarding adoption and moving. After the child's birth, the husband listed himself as the child's father on the birth certificate and claimed the child as his son on his income tax return. Four years after the marriage, the parties divorced. In *T. v. T.*, the wife claims child support on the equitable estoppel theory.

In *T. v. T.*, the Court stated that the elements necessary to establish estoppel, absent a showing of fraud or deception, are a representation, reliance, a change of position, and detriment. *T. v. T.*, 216 Va. 867, 873 (1976), citing *United States v. Fidelity and Cas. Co. of N.Y.*, 402 F.2d 893, 898 (4th Cir. 1968). The Court found that the wife's plans to start her new job and put the child up for adoption were irrevocably changed in reliance on the husband's promise. In addition, the Court found that there was substantial performance by both parties under the agreement for more than four years. Given those findings, the Court concluded that husband's promises to wife estopped him from pleading the statute of frauds. Therefore, the Court held that the wife had established an enforceable oral contract which bound the husband to continue to support the child as if he was the natural father.

In this case, the Court does not find any misrepresentations by the Husband to the Wife or the child regarding his status as the non-biological father. Furthermore, the Court concludes that there was no change in position by Wife as a result of Husband's actions. Wife was going to have the child before she agreed to marry Husband. Lastly, there has been no detriment to Wife as a result of this marriage. Both Wife and her son have benefited from the financial support provided by the Husband during this marriage. Also, Wife currently obtained employment in Virginia at a higher salary than she was receiving in Florida. As the Court finds that Wife cannot satisfy the necessary

elements of the test for equitable estoppel, Wife is not entitled to child support.

Even applying Florida law as an alternative, the result will still be the same. In *Taylor v. Taylor*, 279 So. 2d 364 (Fla. App. 1973), a man, fully aware that a woman had an elder son from a previous marriage and was at the time 4½ months pregnant by another man, expressed a willingness to marry her and assume the responsibilities of being a father to her children. When the expected child was born, the husband gave the child his surname, acted publicly as if he was the father, and arranged for the child to be listed as a dependent for military benefits. However, after three months, the parties separated. Upon termination of the marriage, the wife claimed child support for the younger child. The Court found that the husband had not contracted, expressly or impliedly, to care for and support the child beyond the period of time that he stood *in loco parentis* to the child. *Id.* at 366. Therefore, the wife was not awarded any child support.

Both Florida and Virginia case law follow the basic proposition that only natural parents, adoptive parents, or those persons who contract to care for and support a child have a legal duty to support minor children. *NPA v. WBA*, 8 Va. App. 246, 250 (1989), *accord Hippen v. Hippen*, 491 So. 2d 1304 (Fla. App. D1, 1986). As such, applying either Florida or Virginia case law and the test for equitable estoppel to these facts, the Court holds that Wife has no claim for child support under the theory of equitable estoppel. The Motion for Child Support is denied.

### Spousal Support

Wife contends that Husband is liable for *pendente lite* spousal support. Va. Code § 20-103. Wife contends that she has demonstrated a financial need for temporary spousal support and that Husband has the ability to pay temporary spousal support. The evidence is that during the marriage, the wife was working in the home as a full time homemaker. For fifteen months of the marriage, she did not earn any income outside the home. When she and the Husband separated, she was in financial distress and survived by borrowing funds from family and friends. At the time of the hearing, the Wife was employed as an Administrative Assistant and earning $30,000.00 annually. She was without financial support for five months. Husband was gainfully employed and earning approximately $56,500.00 annually. Under the circumstances of this case and the spousal support guidelines, spousal support is not warranted. The Court will deny the Wife's motion for temporary spousal support. Wife has also requested funds to carry on the divorce suit. Whether

to award attorney's fees *pendente lite* is committed to the sound discretion of the Court. The Court holds that each party will be required to bear their own attorney's fees. Wife's request for funds to carry on the suit is denied.