IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

COLE D. FAHEY,

      Appellant,

v.

MELISSA KAY FAHEY,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-910

Opinion filed July 25, 2016.

An appeal from the Circuit Court for Santa Rosa County.
David Rimmer, Judge.

Cole D. Fahey, pro se, Appellant.

Melissa Kay Fahey, pro se, Appellee.

PER CURIAM.

      Appellant seeks relief from the trial court's order that incorporated the findings and conclusions of the magistrate's recommended report and denied Appellant's exceptions to the report. For the following reasons, we affirm the trial court's order.

## Background

Appellant and Appellee were married in February 2010 upon discovering that Appellee was pregnant. A child, T.C.F., was born in September. The parties separated in June 2011, and Appellee moved to Georgia with T.C.F. While in Georgia, Appellee reconnected with John Pearce, her ex-boyfriend. Appellee convinced Pearce to take a paternity test, which revealed that he was T.C.F.'s biological father.

Appellant filed for divorce in Santa Rosa County in September 2011. Both Appellant and Appellee were represented by counsel in their divorce proceeding, and upon advice of counsel, the parties voluntarily stipulated that Appellant was not the biological father of T.C.F. The final judgment of dissolution of marriage was entered on March 13, 2012. Paragraph 4 of the judgment incorporated the parties' stipulation:

> Genetic testing has revealed that the Husband is not the biological father of the minor child. The Wife states that John Pierce [sic] is the biological father of the minor child. By stipulation of the parties, the Husband, Cole D. Fahey, shall have no parental rights or responsibilities regarding the minor child, [T.C.F.].

In August 2012, Appellee began seeing Appellant again. During this time, Pearce was seeking to make T.C.F. his legitimate child, and he filed a petition for legitimation and custody in the Georgia Superior Court in November 2012.

2

Meanwhile, Appellee moved back to Florida with the child, and Appellant and Appellee were remarried December 31, 2012.

Appellant then sought to intervene in Pearce's legitimation and custody lawsuit on the basis that he was the legitimate and legal father of T.C.F. Appellant also moved to dismiss Pearce's petition on the same grounds, asserting that the court lacked subject-matter jurisdiction. The Georgia court denied both motions. In October 2014, the Georgia court rendered its final order on Pearce's petition, finding T.C.F. to be Pearce's legitimate child and awarding him primary physical custody. The order was affirmed by the Georgia appellate court, which held that the stipulation contained in the final judgment of dissolution rendered in Florida had effectively terminated Appellant's parental rights.

Shortly after the Georgia appellate court issued its opinion, Appellant filed a *pro se* motion in the Santa Rosa Circuit Court, seeking relief from the final judgment of dissolution of marriage pursuant to rule 1.540(b)(4), Florida Rules of Civil Procedure. Appellant sought to void Paragraph 4 of the judgment that contained the stipulation on the grounds that it purported to terminate his parental rights to T.C.F. without invoking the safeguards of chapter 39, Florida Statutes. Appellee filed a motion in agreement with Appellant's motion. The motions were heard before a magistrate, and following the hearing, the magistrate's report recommended that Appellant's petition for relief be dismissed with prejudice. The

3

magistrate found that the stipulation was not a termination of parental rights, but instead was a stipulation as to Appellant's non-paternity; therefore, there was no legal basis upon which to void the final judgment of dissolution. The parties' exceptions to the magistrate's recommended report were denied by the trial court, and the court issued an order incorporating the report. This appeal followed.

Analysis

A trial court reviews a magistrate's report to ensure the magistrate's findings are not clearly erroneous and that the magistrate has not misconstrued the law. Boykin v. Boykin, 843 So. 2d 317, 320 (Fla. 1st DCA 2003). Meanwhile, the trial court's adoption of a magistrate's report is reviewed for abuse of discretion. Brown v. Brown, 149 So. 3d 108, 110 (Fla. 1st DCA 2014).

Under Florida law, parental rights may only be terminated through adoption or the strict procedures set forth in chapter 39, Florida Statutes; thus, an agreement purporting to terminate parental rights is void as a matter of public policy. Casbar v. Dicanio, 666 So. 2d 1028, 1029-30 (Fla. 4th DCA 1996). However, stipulations or agreements concerning paternity can validly serve as the basis for a court's paternity determination. See Daniel v. Daniel, 695 So. 2d 1253, 1254 (Fla. 1997) (noting "the parties stipulated that Michael Daniel was not the biological father of the child"); Nevitt v. Bonomo, 53 So. 3d 1078, 1080 (Fla. 1st DCA 2010) (noting the trial court found Nevitt to be the biological father of the child "based upon an

4

agreement between Mr. Nevitt and Ms. Bonomo"); L.S.H. v. P.L.H., 739 So. 2d 1264, 1265 (Fla. 2d DCA 1999) ("L.S.H. acknowledged that P.L.H. was not the biological father of a child conceived and born during the marriage. While this stipulation is valid, the wife's waiver of child support cannot bind the court." (emphasis added)).

Here, as noted by the magistrate, there is no suggestion in the final judgment of dissolution that the parties' stipulation was a termination of parental rights, and there was also no "Final Judgment of Termination of Parental Rights." Rather, the final judgment provided that, based on genetic test results showing that Appellant was not the biological father, the parties stipulated that Appellant "shall have no parental rights or responsibilities regarding the minor child." The stipulation can easily be interpreted as flowing from the discovery that Appellant was not T.C.F.'s biological father and reinforcing the well-settled principle that Appellant had no legal duty to support the child, "who is neither his natural nor his adopted child and for whose care and support he has not contracted." Daniel, 695 So. 2d at 1254 (quoting Albert v. Albert, 415 So. 2d 818, 820 (Fla. 2d DCA 1982)).

This non-paternity determination had no effect on T.C.F.'s status as a legitimate child, born during the parties' valid marriage. As held by the Florida Supreme Court in Daniel, "paternity and legitimacy are related, but nevertheless separate and distinct concepts," and a child's legitimacy "will not be affected by a

5

determination of paternity or any orders of support that may follow such a determination." 695 So. 2d at 1254-55. Because T.C.F.'s legitimacy was not contested in the dissolution proceeding, Appellant remained T.C.F.'s "legal father," and T.C.F. remained legitimate. Id. at 1255. However, while it may have been an error under Florida law for the Georgia court to conclude that Appellant was no longer the child's legal father, its judgment is entitled to full faith and credit, because the Georgia Court of Appeals found that the trial court did not exceed its subject-matter jurisdiction under Georgia law by legitimating T.C.F. Atwell v. Atwell, 730 So. 2d 858, 860 (Fla. 1st DCA 1999). When Appellant attempted to intervene in the Georgia lawsuit, he also moved to dismiss for lack of subject-matter jurisdiction. While Appellant's jurisdictional argument was ultimately unsuccessful, it was raised and litigated in the Georgia proceeding; therefore, *res judicata* precludes Appellant from using the same grounds to collaterally attack the Georgia judgment in a Florida court. Id.; Kelley v. Kelley, 147 So. 3d 597, 602 (Fla. 4th DCA 2014) (holding that "collateral attacks wilt against judgments involving parties who have had their day in court").

This court is sensitive to the effect the Georgia court's final decision has had on Appellant, and acknowledges that, while Appellant entered into the stipulation voluntarily and while represented by counsel, he may not have foreseen the possibility of T.C.F. becoming Pearce's legitimate child. However, this court

6

cannot conclude that the magistrate's recommended report was clearly erroneous, or that the trial court abused its discretion in adopting it.

AFFIRMED.

B.L. THOMAS, WINOKUR, and JAY, JJ., CONCUR.